UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | No. 2:22-cv-00583 WBS DB |
| Plaintiff, | ORDER RE: MOTION TO DISMISS |
| v. | |
| SL ONE GLOBAL, INC., dba VIVA SUPERMARKET, a California Corporation; SMF GLOBAL, INC., dba VIVA SUPERMARKET, a California Corporation; NARI TRADING, INC., dba VIVA SUPERMARKET; UNI FOODS, INC., dba VIVA SUPERMARKET, a California Corporation; SEAN LOLOEE, an individual, and as owner and managing agent of the Corporate Defendants; and KARLA MONTOYA, an individual, and managing agent of the Corporate Defendants, | |
| Defendants. | |

----oo0oo----

Plaintiff Martin J. Walsh, in his capacity as Secretary of the United States Department of Labor, brought this action

1

against defendants SL One Global, SMF Global, Nari Trading, and Uni Foods, all of which allegedly do business as Viva Supermarket (the "corporate defendants"); Sean Loloee; and Karla Montoya alleging various ongoing violations of federal labor laws at grocery stores operated by defendants. Specifically, plaintiff alleges (1) interference with employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3); (2) obstruction of the Secretary's investigation under the FLSA, 29 U.S.C. § 211(a); (3) violation of minimum wage requirements under the FLSA, 29 U.S.C. §§ 206, 215(a)(2); (4) violation of overtime requirements under the FLSA, 29 U.S.C. §§ 207, 215(a)(2); (5) violation of recordkeeping requirements under the FLSA, 29 U.S.C. §§ 211(c), 215(a)(5); (6) violation of child labor requirements under the FLSA, 29 U.S.C. §§ 212, 215(a)(4); and (7) violation of paid sick leave requirements under the Emergency Paid Sick Leave Act, Pub. L. No. 116-127, 134 Stat. 178 §§ 5101-5111 (2020).  (Compl. (Docket No. 1).)

Defendants now move to dismiss Count III (minimum wage) and Count IV (overtime) of plaintiff's Complaint as against defendant SL One Global to the extent they allege wage violations before February 20, 2020, and as against all other defendants to the extent they allege violations before April 1, 2019; all claims against defendant Montoya; and plaintiff's Count Six (child labor) claims in their entirety.  (Mot. (Docket No. 7).)

I.  Factual and Procedural Background[1]

The Secretary of Labor is charged with enforcing the

---

[1] All facts recited herein are as alleged in the complaint except as otherwise noted.

FLSA's requirements regarding employers' labor practices. (Compl. at ¶ 3.)  Defendant Loloee owns and is managing agent of the corporate defendants, each of which operates as a Viva Supermarket location in Sacramento.  (See id. at ¶¶ 4-12.) Defendant Montoya is a General Manager and agent of the corporate defendants.  (Id. at ¶ 16.)

In 2009, the United States Department of Labor's Wage and Hour Division (the "WHD") began an investigation into Loloee's and SL One Global's wage and hour practices, covering a period from November 10, 2008 to May 26, 2009.  (Id. at ¶¶ 24-25.)  The WHD concluded Loloee and SL One Global had violated multiple FLSA provisions, including minimum wage and child labor provisions.  (Id. at ¶ 25.)  Loloee and SL One Global entered into a settlement agreement with the WHD to pay back wages and to pay civil penalties for the alleged child labor violations.  (Id. at ¶ 27.)

In 2020, the WHD began a second investigation into Loloee's and SL One Global's wage and hour practices, covering a period from February 20, 2018 to February 19, 2020 (the "Second Investigation").  (Id. at ¶ 28.)  The WHD concluded those defendants had again violated multiple FLSA provisions, and it and those defendants entered into a second settlement agreement to pay back wages (the "Second Agreement").  (Id. at ¶¶ 29-31.) As part of the Second Agreement, SL One Global and Loloee represented that they were in full compliance with the FLSA and would continue to comply going forward.  (Id. at ¶ 32.)

Later in 2020, the WHD began a third investigation, this time into the wage and hour practices of Loloee and all four

3

1    corporate defendants in this action (the "Third Investigation").
2    (Id. at ¶¶ 33-34.)  Plaintiff alleges defendants repeatedly
3    interfered with that investigation, including by directing
4    employees to lie to or not speak with investigators, hiding
5    employees from investigators, and threatening employees with
6    deportation and other immigration consequences if they
7    cooperated.  (Id. at ¶ 35.)  During the Third Investigation, the
8    WHD also received information that Loloee and Montoya coerced
9    employees who had received back wages pursuant to the Second
10   Agreement to return those payments.  (Id. at ¶ 37.)

11           Plaintiff alleges that, based on its investigations,
12   defendants have failed to pay required minimum wages and overtime
13   premiums or to retain accurate records since at least October 23,
14   2017; have employed minors in hazardous occupations since at
15   least October 25, 2019; have employed minors to work more hours
16   than is permitted since at least September 14, 2019; and failed
17   to provide required paid sick leave to employees between April 1,
18   2020 and December 30, 2020, or to maintain accurate records of
19   paid sick leave requests and determinations.  (Id. at ¶¶ 38-63.)
20   Plaintiff filed this action on April 1, 2022, seeking injunctive
21   relief, back wages, and liquidated damages.  (Compl.)

22   II.  Discussion

23           Federal Rule of Civil Procedure 12(b)(6) allows for
24   dismissal when the plaintiff's complaint fails to state a claim
25   upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).
26   "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."
27   Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry
28   before the court is whether, accepting the allegations in the

complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has alleged "sufficient facts . . . to support a cognizable legal theory," id., and thereby stated "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Courts are not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Bell Atl. Corp., 550 U.S. at 555. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A. Minimum Wage and Overtime Claims

1. Settlement Agreement

Defendants first argue that the claims in Counts III and IV, alleging violations of the FLSA's minimum wage and overtime provisions, are precluded by the Second Agreement to the extent they assert violations against SL One Global between February 20, 2018 and February 19, 2020. (Mot. at 10-13.) Defendants point to the language of the Second Agreement,[2] which

---

[2] Although generally "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), this rule does not apply to "documents incorporated by reference in the complaint, or matters of judicial notice," United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). The Second Agreement and various provisions therein are referenced

5

"covered [SL One Global]'s operations from 02/20/2018 to 02/19/2020" and provides that SL One Global "agree[d] to pay the back wages due the employees in question" for that period, in arguing that SL One Global is released from liability for alleged violations covering that period.  (Docket No. 11-1 at 4; see Mot. at 11-13.)

Plaintiff does not argue that the Second Agreement did not, at least at the time it was executed, release SL One Global from liability for minimum wage and overtime payments owed for the period covered by the Second Investigation, or that the back wages were never paid.  (See Opp. at 4 (Docket No. 11).)  Rather, as plaintiff's opposition brief indicates, and as counsel for plaintiff seemed to confirm at oral argument, plaintiff's position is that by requiring employees to return the back wages they received under the Second Agreement, SL One Global breached or voided the Second Agreement, such that it no longer releases SL One Global from FLSA liability for the same alleged violations.  (See id. ("To the extent that Defendants coerced employees to kickback the wages distributed pursuant to the Agreement, these claims are not 'resolved,' as Defendants aver. SL One Global has not 'bought its peace' if it charged it back to

---

repeatedly in the Complaint and thus may be considered incorporated by reference.  (See Compl. at ¶¶ 31-32, 37, 67, 76-77.)

Accordingly, although defendants also seek judicial notice of the Second Agreement, (see Request for Judicial Notice at ¶ 4 (Docket No. 7-2)), formal judicial notice thereof is unnecessary. Because consideration of the additional documents that are the subject of defendants' request for judicial notice is unnecessary to the resolution of the instant motion, defendants' request is denied.

6

the employees it owed in yet another violation of the FLSA.") (internal citation omitted).)

However, plaintiff identifies no provision of the Agreement or any other authority to support the proposition that coercing employees to return wages paid under the Agreement somehow voids the Agreement, thereby allowing plaintiff to bring a new suit to recover for the same violations it had already settled.  When asked at oral argument whether plaintiff's claim might instead be presented as one for breach of contract, counsel for plaintiff reiterated that it is plaintiff's intent to proceed with the FLSA minimum wage and overtime violations.  The court expresses no opinion on whether the Secretary would be permitted to proceed on a breach of contract theory, but because he has not made clear how the alleged kickbacks voided the Second Agreement, the Secretary has failed to rebut defendants' showing that the Agreement precludes plaintiff's Count III and IV claims against SL One Global for alleged violations from between February 20, 2018 and February 19, 2020.  Therefore, to the extent those claims assert violations against SL One Global for that period, those claims will be dismissed.

### 2.   Statute of Limitations

Defendants argue that plaintiff's claims under Counts III and IV are also barred as against all defendants to the extent they allege violations from before April 1, 2019, based on the applicable statute of limitations.  (Mot. at 10, 13-16.)  The statute of limitations for FLSA actions for unpaid minimum wages or overtime compensation is two years, or three years if the violation is willful.  29 U.S.C. § 255(a); Scalia v. Emp. Sols.

Staffing Grp. LLC, 951 F.3d 1097, 1102 (9th Cir. 2020).  "A new cause of action accrues at each payday immediately following the work period for which compensation is owed."  Dent v. Cox Comms. Las Vegas, Inc., 502 F.3d 1141, 1144 (9th Cir. 2007) (citing O'Donnell v. Vencor Inc., 466 F.3d 1104, 1113 (9th Cir. 2006)).  Accordingly, the statute of limitations for each claim begins to run at that time.  See id.; O'Donnell, 466 F.3d at 1113.

Because plaintiff's Complaint was filed on April 1, 2022 and alleges defendants willfully violated the FLSA, (Compl. at ¶¶ 72-73, 75), the statutory limitations period for plaintiff's minimum wage and overtime claims is three years.  See 29 U.S.C. § 255(a).  Accordingly, any claims alleging FLSA violations from before April 1, 2019, are time barred, and unless the statute is tolled must be dismissed.[3]

### a.  Equitable Tolling

A footnote in plaintiff's opposition brief states that plaintiff "also seeks equitable tolling of the applicable three-year statute of limitations due to Defendants' interference and retaliation used to obscure violations from the Secretary." (Opp. at 5 n.2.)  "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the

---

[3] Ironically, plaintiff, who appears to argue that the Second Agreement is void, relies upon a provision of that very agreement to argue that defendant has "waive[d] all rights and defenses which may be available by virtue of statute of limitations."  (Docket No. 11-1 at 5.)  As discussed above, plaintiff has not shown that the Second Agreement is void, and because the court has concluded that the Second Agreement bars plaintiff's minimum wage and overtime claims against SL One Global for the period from February 20, 2018 to February 19, 2020, whether the statute of limitations provides an additional bar to those same claims is immaterial.

8

part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999) (citation omitted).

As counsel for plaintiff acknowledged at oral argument, for equitable tolling to apply, there must be a causal relationship between the employer's alleged misconduct and the plaintiff's failure to file claims within the statutorily required period. Although the relevant portions of the Complaint do detail the ways in which defendants allegedly interfered with the Third Investigation, there are no allegations indicating which if any claims would have been brought within the statutory period but for the interference or what particular period they would cover. (See Compl. at ¶¶ 35-36, 44); Stoll 165 F.3d at 1242. Without this information, the court is unable to ascertain whether the requisite causal relationship in fact exists, or to which dates equitable tolling would apply if it is justified. The court therefore declines to apply equitable tolling at this time.

B. Defendant Montoya

Defendants also seek dismissal of Montoya as a defendant in this action, arguing she cannot be considered an employer within the meaning of the FLSA. (Mot. at 16-21.) The FLSA provides that FLSA liability may be established against an "employer," which it defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 203(d), 216.

The Ninth Circuit has held "that the definition of

'employer' under the FLSA is not limited by the common law concept of 'employer,' but 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009) (quoting Lambert v. Ackerley, 180 F.3d 997, 1011-12 (9th Cir. 1999) (en banc)). "The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity,'" the "touchstone" of which "is the 'economic reality' of the relationship." Id. (first quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947), then quoting Goldberg v. Whitaker House Coop. Inc., 366 U.S. 28, 33 (1961)). "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Id. (quoting Lambert, 180 F.3d at 1012).

The allegations of Montoya's control are not merely conclusory. Although the Complaint does allege Montoya was the corporate defendants' "agent" and "acted directly or indirectly in the interests of [the corporate defendants] in relation to their employees," allegations that track the legal standard, this conclusion is supported by specific allegations that she was "the General Manager" of the defendant businesses, "hir[ed], fir[ed], [and] disciplin[ed] employees," and "determin[ed] work schedules and employment practices." (Compl. at ¶¶ 16-17.) These allegations go well beyond those the Ninth Circuit found to be insufficient in Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677 (9th

1    Cir. 2009), upon which defendants rely, in which the plaintiffs'
2    only allegation showing control over employees was the conclusory
3    allegation that the alleged employer "exercised control over
4    their day-to-day employment."  See id. at 683.
5         At a basic level, the title "General Manager" connotes
6    substantial authority.  More importantly, performance of the
7    alleged responsibilities clearly constitutes an "exercise[ ] [of]
8    control over the nature and structure of the employment
9    relationship"; hiring and firing determines whether an individual
10   will become or remain an employee, and work schedules and
11   practices pertain directly to the structure of the employment.
12   Indeed, the Ninth Circuit has previously held that officers with
13   "the power to hire and fire employees; the power to determine
14   salaries; [and] the responsibility to maintain employment
15   records" are employers within the meaning of the FLSA.  Lambert,
16   180 F.3d at 1012.
17        Defendants also suggest that to be an employer within
18   the meaning of the FLSA, an individual ordinarily must also have
19   "an ownership interest or an executive-level position" in the
20   defendant business.  (See Mot. at 19.)  They make no argument,
21   however, as to why Montoya's alleged role as "General Manager" of
22   all four of the defendant businesses, each of which operates a
23   separate Viva Supermarket location, does not amount to an
24   executive-level position.  Moreover, Ninth Circuit precedent
25   makes clear that an individual need not have any ownership
26   interest in a defendant business to be an employer within the
27   meaning of the FLSA.  In Boucher, the court found that the
28   defendant business's chief executive officer and its official

11

"responsible for handling labor and employment matters," who had a 70 percent and 30 percent investment ownership in the business respectively, were employers.  572 F.3d at 1091.  However, it also found that the business's chief financial officer, who "had responsibility for supervision and oversight of the [business's] cash management" but had no ownership interest, was also an employer.  Id.

In light of these considerations, the court concludes that the Complaint contains sufficient factual allegations to establish at the pleading stage that Montoya is a "person acting directly or indirectly in the interest of an employer in relation to an employee" and therefore qualifies as an employer within the meaning of the FLSA.  The court therefore will not dismiss this action as against her on this ground.

### C. Child Labor Claims

Defendants next argue that the claims asserted in Count VI, which seek injunctive relief pursuant to 29 U.S.C. § 217 for violation of the FLSA's child labor provisions, should be dismissed under the primary jurisdiction doctrine.  (Mot. at 21-24.)  "Primary jurisdiction . . . . is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co., Ltd. V. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002).  "The doctrine of primary jurisdiction is committed to the sound discretion of the court when 'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'"

Id. at 781 (quoting United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)) (other citations omitted). Factors to be considered in determining whether exercise of such discretion is appropriate include "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Syntek, 307 F.3d at 781 (citing Gen. Dynamics, 828 F.2d at 1362).

     Defendants point out that plaintiff has also assessed a civil money penalty against defendants for alleged child labor violations, that defendants have filed an exception to that penalty, and that exception is currently under review by an administrative law judge. (Mot. at 22.) FLSA regulations provide that businesses against whom civil money penalties are assessed may seek initial and appellate review of penalty determinations through an administrative process prescribed by those regulations. See 29 C.F.R. §§ 580.1-18. Defendants argue that because, pursuant to those regulations, an administrative law judge will determine whether they violated the FLSA's child labor provisions and whether they did so repeatedly or willfully -- determinations that partly overlap with the determinations the court would need to make in ruling on plaintiff's request for injunctive relief -- the potential for inconsistent rulings on those issues makes exercise of primary jurisdiction appropriate. (Mot. at 22-23.)

     Multiple considerations, however, weigh against

exercise of primary jurisdiction here.[4]  First, as the Ninth Circuit has explained, exercise of the doctrine is appropriate where the same remedy is sought in both administrative and judicial fora.  See Syntek, 307 F.3d at 781.  Here, however, the civil money penalty currently subject to administrative review is a form of relief entirely distinct from the injunction plaintiff seeks here.  Indeed, because the FLSA vests district courts with sole jurisdiction to issue injunctive relief, see 29 U.S.C. § 217, plaintiff is unable to do so at the administrative level and must do so in court.  Although the FLSA regulations do appear intended to allow "an administrative body to have the first word" on the propriety of civil money penalties, Gen. Dynamics, 828 F.2d at 1362 (citing United States v. RCA, 358 U.S. 334, 339 (1959)), this intention appears confined to money penalties and thus does not justify exercise of the primary jurisdiction doctrine as to injunctive relief.

Second, although defendants cite the risk of inconsistent rulings on whether defendants violated the relevant child labor provisions in arguing the primary jurisdiction doctrine applies, counsel for plaintiff has submitted a declaration stating, under penalty of perjury, that once

---

[4]  Plaintiff argues defendants' exception to the civil money penalty is not actually pending before an administrative law judge because, although the exception has been filed, it has not yet been referred to an administrative law judge for determination and therefore cannot support primary jurisdiction. (Opp. at 8-9.)  However, plaintiff provides no support for this argument, and indeed the Supreme Court has foreclosed it, explaining that primary jurisdiction "comes into play when[ ] . . . the judicial process is suspended pending referral . . . to the administrative body."  United States v. W. Pac. R.R. Co., 352 U.S. 59, 63-64 (1956) (emphasis added) (citation omitted).

14

defendants' exception is referred to an administrative law judge she "will seek a stay [of the administrative action] pending the resolution of the district court litigation." (Decl. of Hailey McAllister at ¶ 6 (Docket No. 11-1).) If the review of defendants' exception is stayed until after this court considers plaintiff's request for injunctive relief, there will be no risk of simultaneous proceedings addressing the child labor claims, and no more risk of inconsistent rulings than there would be if this action were stayed pursuant to the primary jurisdiction doctrine.

Even assuming counsel does not honor that commitment, however, or the request for a stay is denied, equitable concerns outweigh the risk of inconsistent rulings in the circumstances of this case. Plaintiff alleges significant violations of FLSA provisions aimed at protecting children, including those prohibiting employers from requiring children to use dangerous machinery or perform other hazardous tasks, which plaintiff here alleges amounts to "oppressive child labor" within the meaning of the FLSA. (See Compl. at ¶¶ 85-86, 88 (citing 29 U.S.C. § 212(c)).) To dismiss or stay plaintiff's child labor claims pending an administrative law judge's review of the civil money penalty, and a potential appeal thereof, would impermissibly delay resolution of allegations potentially meriting injunctive relief that would protect children from alleged ongoing safety hazards. (See id. at ¶ 84.)[5]

---

[5] Moreover, defendants do not argue that the administrative law judge's determination on the alleged child labor violations would have a preclusive effect on this court, such that resolution at the administrative level would streamline

For the foregoing reasons, the court declines to exercise its discretion to apply the primary jurisdiction doctrine. Accordingly, defendants' motion, to the extent it seeks dismissal of plaintiff's child labor claims, will be denied.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 7-1) be, and the same hereby is, GRANTED IN PART and DENIED IN PART as follows:

- Count III (minimum wage) and Count IV (overtime) of plaintiff's Complaint are DISMISSED as against defendant SL One Global, to the extent that they allege violations before February 19, 2020;
- Count III (minimum wage) and Count IV (overtime) of plaintiff's Complaint are DISMISSED as against all other defendants, to the extent that they allege violations before April 1, 2019; and
- The Motion is DENIED in all other respects.

Plaintiff has twenty days from the date of this Order to file a first amended complaint, if plaintiff can do so consistent with this Order.

Dated: August 10, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

proceedings on the child labor claims in this court.